**IN THE COURT OF APPEALS OF IOWA**

No. 25-0081
Filed April 23, 2025

**IN THE INTEREST OF D.L.,**
**Minor Child,**

**Z.L., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Karen A. Taylor of Taylor Law Offices, P.C., Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Sandra C. Johnson of Flanagan Law Group P.L.L.C., Des Moines, attorney and guardian ad litem for minor child.

Considered without oral argument by Schumacher, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

A mother appeals the termination of her parental rights to her child, born in 2023.[1] She challenges the sufficiency of the evidence supporting the grounds for termination under Iowa Code section 232.116(1)(d), (h), and (i) (2024). She also contests the juvenile court's finding that termination was in the child's best interests and its denial of additional time to work toward reunification. Our review is de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

Termination of parental rights is governed by a three-step analysis under Iowa Code section 232.116. *Id.* Confining our review to the steps challenged by the mother, *see In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), we turn first to whether the State established a ground for termination by clear and convincing evidence. We choose to focus on paragraph (h). *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (noting termination may be affirmed on any ground supported by clear and convincing evidence). The mother contests the fourth element of that ground— whether the child could be safely returned to her custody at the present time. *See id.* (interpreting "present time" to mean "the time of the termination hearing").

The child was removed from his parents' custody in August 2023 when they brought him to urgent care after a weekend of inconsolable crying. On examination, doctors discovered multiple fractures in the three-month-old's ribs and femur, which were "highly specific and highly concerning for physical child abuse." The infant was also malnourished. The mother told a child protective worker that she had left the child alone with his father overnight, even though she

---

[1] The juvenile court also terminated the parental rights of the child's father, who does not appeal.

knew that he was under investigation for the death of another infant. When the father returned the child to her care the next day, the child was crying and in obvious distress. That distress continued for the next three days before the mother and father sought medical attention. Both parents were prosecuted for the child's injuries, and the mother later pled guilty to neglect of a dependent.

The mother urges us to look past this incident and focus on the progress she has made with the help of services from the Iowa Department of Health and Human Services. We commend those efforts—which included participation in parenting classes, supervised visits, and therapy—but they did not resolve all of the department's concerns for the mother's protective capacity.

At the time of the termination hearing, the mother did not have housing of her own. She was living with her parents, who did not pass the department's child abuse registry or criminal background checks. The mother also admitted that she had started a new relationship with a man who had a "criminal background" and that she "[did]n't feel safe with him being around [her] son." Seeing as it was the mother's decision to entrust the child to a dangerous caretaker that started this case, we agree with the juvenile court that the mother "has not fully processed her role in [the child's] abuse and neglect, nor shown the protective capacity necessary to ensure that [he] would not be at risk in the future."

Additionally, even though it had been recommended months earlier, the mother waited until July 2024 to start therapy to address her childhood and adult trauma. While she was making progress, the department's case manager testified there was "a lot more work to do." The mother seemed to agree, acknowledging that she was "still unpacking a lot of things" from her trauma history that led to the

child's injuries and her response to those injuries. Given these unresolved issues, we find clear and convincing evidence that the child could not be safely returned to the mother at the time of the hearing.

The next question is whether termination of parental rights is in the child's best interest. *See* Iowa Code § 232.116(2). To that end, the mother emphasizes the work she has done to address the emotional barriers that she believes contributed to the child's neglect. But the focus of the best-interests inquiry is on the "long-term nurturing and growth of the child," not the progress of the parent. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021). Both the case manager and the guardian ad litem expressed ongoing concerns with the mother's parenting abilities and home environment. "It is well-settled law that we cannot deprive a child of permanency . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. The child has thrived in his pre-adoptive foster placement since August 2023. We find that his best interests will continue to be served outside the mother's custody.

Finally, we reject the mother's argument that she likely would have achieved reunification with a six-month extension of time. Granting a parent more time in lieu of termination is appropriate only if the record shows "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b); *see also id.* § 232.117(5). We agree with the juvenile court's reasons for denying the mother's request:

> This is not about a parent unwilling to participate in services or unwilling to try. This case is about a parent who, even with services, continues to show a lack of protective capacity. She has not processed her own trauma to the extent that she is able to participate in [the child's] medical appointments. She has not applied

what she has learned in services to identify red flags in relationships. She has not processed the domestic violence she experienced, or decision-making in allowing [the child's father] access to her child. She shows poor insight in developing new relationships. Given the significant work that [the mother] needs to do, coupled with her lack of safe and appropriate housing, the court cannot find that reunification is likely to occur within the next six months or that an extension is in the child's best interest.

An extension of time was unwarranted under these facts.

We affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**